IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

SUE DAYOAN,                        *

    Plaintiff,                    *

vs.                               *

LOUIS DEJOY, POSTMASTER           *        CASE NO. 4:21-CV-103 (CDL)
GENERAL, UNITED STATES POSTAL
SERVICE,                          *

    Defendant.                    *

_____

O R D E R

Sue Dayoan alleges that her employer, the United States Postal Service ("USPS"), discriminated against her because of her race, national origin, and disability. She also contends that USPS retaliated against her for complaining of discrimination. Dayoan asserts claims under 42 U.S.C. § 1981, the federal sector provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. USPS seeks summary judgment on all of Dayoan's claims. For the reasons explained below, USPS's summary judgment motion (ECF No. 9) is denied as to Dayoan's failure-to-accommodate claim under the Rehabilitation Act but granted as to her other claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Sue Dayoan is a rural carrier for the USPS in Columbus, Georgia. She identifies her race as Asian and her national origin as South Korean. Dayoan began her career with the USPS as a rural carrier associate ("RCA"), which is a substitute for the regular rural carrier. Both rural carriers and RCAs must sort, load, and deliver mail. As an RCA, Dayoan's primary route was Rural Route 9; if the rural carrier for that route was not working, Dayoan delivered the route. She was also guaranteed to cover Saturday deliveries for Rural Route 9. When Dayoan was

2

not filling in for the rural carrier on Rural Route 9, she could be assigned to any of the other rural routes.

Although most of the rural routes, including Rural Route 9, were assigned a postal delivery truck, one of the thirteen rural routes—Rural Route 13—was not.   A carrier on Rural Route 13 could request a postal delivery truck.   If a postal delivery truck was available, it could be assigned from another route. Pl.'s Dep. 27:20-28:15, ECF No. 11.   If a postal delivery truck was not available for Rural Route 13, then the carrier had to use her personal vehicle for the route.   *Id.* at 28:16-23. Dayoan pointed to evidence that the carriers covering Rural Route 13 got to use a postal delivery truck most of the time. Every time Dayoan covered Rural Route 13 before April 2017, she was allowed to use the postal delivery truck, and her evidence suggests that the Rural Route 13 carriers used a postal delivery truck approximately seventy percent of the time between April 2017 and August 2017.   Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. 5, Rural Carrier Trip Reports, ECF No. 12-8.

I.   **Dayoan's Injury and Treatment**

In February 2017, Dayoan was in a wreck while delivering mail.   She injured her back and neck.   Dayoan sought medical treatment, and she was out of work starting February 24, 2017. Dayoan submitted documentation about her injury to her supervisor, Andre Hayes.   Dayoan's doctor initially identified

several work restrictions, including restrictions on squatting, kneeling, and how much weight Dayoan could lift, push, or pull. On March 29, 2017, the doctor reiterated that Dayoan was not permitted to squat or kneel, but he increased the amount of weight Dayoan was permitted to lift, push, or pull from 20 pounds to 30 pounds.  He also stated that Dayoan "may drive mail truck" but would "need right hand drive mail truck to keep from having to get in and out of the truck often."  Def.'s Mot. Summ. J. Ex. 3, Physician Work Activity Status Report, Mar. 29, 2017, ECF No. 9-5 at 6.  Hayes told Dayoan she could not return to work with these restrictions because she had to be able to bend and kneel to do her job.

On April 10, 2017, Dayoan's doctor released her from care. The status report listed Dayoan's diagnoses as "sprain of ligaments of lumbar spine" and "other intervertebral disc displacement, lumbar region," but it stated that Dayoan was released to "[r]eturn to regular duty on 04/10/2017."  Def.'s Mot. Summ. J. Ex. 3, Physician Work Activity Status Report, Apr. 10, 2017, ECF No. 9-5 at 7.  Unlike the prior status reports, the April 10, 2017 status reports did not identify any restricted activity or make any remark about restrictions, such as the need for a mail truck.  *Id.*  After Dayoan's doctor released her for duty without restrictions, Hayes permitted Dayoan to return to work on April 15, 2017.

4

## II.  The Rural Route 13 Opportunity

Around the same time as Dayoan was cleared to return to work, the regular rural carrier for Rural Route 13 was promoted, leaving a vacancy for a regular rural carrier on that route, which was considered an "auxiliary" route.  Under USPS's seniority scheme, Dayoan was next in line for the route, which would have guaranteed her six days of work per week instead of just one.  USPS offered her the position via text message from Hayes.  Dayoan responded, "I need Postal vehicle to deliver.  I can't get off every mail box due to back pain."  Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. 3, Text Chain 2 (Apr. 10, 2017), ECF No. 12-6 at 2.  Hayes replied, "Sorry but that route doesn't come with a postal vehicle."  *Id.*  Dayoan responded, "If you can't, I will not have rr13 and I heard it [will] not affect my seniority from union."  *Id.*

Dayoan asked her union representative for more details about the situation.  Two days after the initial text message exchange with Hayes regarding Rural Route 13, Dayoan sent Hayes a text that included the union representative's response that relinquishing the auxiliary route would not affect Dayoan's seniority.  Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. 3, Text Chain 3 (Apr. 12, 2017), ECF No. 12-6 at 3.  Dayoan asked Hayes to "verify because I want to keep myself off from aux 13 and remain [Rural Route 9] as my primary."  *Id.*  Hayes responded,

"[Rural Route 9] is your primary, but you are senior and next to work the open route.  So you need to come in tomorrow to work rural route 13."   *Id.* at 4.   Dayoan responded, "Im asking relinquish aux route sir."   *Id.*   Hayes sent a group text to Dayoan and others stating that Dayoan relinquished Rural Route 13, and he asked if anyone else was interested in the job.  He also stated, "Understand this is a route where you have to use your own vehicle."  Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. 4, Text Chain 1 (Apr. 13, 2017), ECF No. 12-7.   After Dayoan relinquished Rural Route 13, she continued to cover Rural Route 9, and she also filled in for other drivers.  Shevonne Simpson, who is black, got the Rural Route 13 assignment.   Dayoan occasionally covered for Simpson, but only on days when a postal delivery truck was available.

### III. Sunday Delivery Issues

Under an agreement between USPS and the National Rural Letter Carriers Association, RCAs like Dayoan could volunteer to be in a schedule rotation for Sunday parcel delivery.  Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. 6, Memo. of Understanding 1-2 (May 24, 2016), ECF No. 12-9 at 4-5.  Some RCAs were on the "volunteer list," but Dayoan was not.  Under the applicable rules, if there are not enough workers from the volunteer list, then the manager had to schedule "leave replacements from the non-volunteer list . . . on a rotating basis."   *Id.* at 5.

Dayoan asserts that she was the only RCA on the "non-volunteer list" who was scheduled to work Sundays involuntarily.

Dayoan was scheduled for Sunday parcel delivery on May 14, 2017. On May 9, 2017, Dayoan sent a text message to Hayes requesting leave for May 14, 2017. Hayes did not respond to the text. When Dayoan saw Hayes in the office on May 13, 2017, she asked why he had not responded to her text message leave request. Hayes responded that he was not going to change the schedule and that she should call "Attendance Control" to request the leave. Dayoan followed Hayes's instruction, though she did not receive explicit permission to take leave on May 14. Dayoan did not work on May 14, 2017, and she was not marked absent without leave. Dayoan asserts that Hayes had a hostile attitude toward her on May 15, 2017 and told her not to touch anything. After Dayoan stood idle for about fifteen minutes, Columbus Postmaster General Sandy Strozier told Dayoan to get back to her case. Around fifteen minutes after that, Hayes told Dayoan she could start to work. Dayoan filed a grievance about these two incidents on May 15, 2017. She also made initial contact with USPS's equal employment opportunity office. The next day, Hayes went on extended leave for two months, though he attended an informal meeting with Dayoan and the EEO counselor in June 2017. Dayoan later filed a formal EEO complaint of discrimination on August 16, 2017.

## IV.  **Dayoan's Notice of Removal**

In August 2017, an "auxiliary vacancy" opened for an RCA on Rural Route 12.  Dayoan was assigned to that role, working six days per week.  Hayes contends that Dayoan arrived to work six minutes late on August 22, 2017.  He interviewed Dayoan about the incident, concluded that Dayoan was not honest with him, and issued her a "Notice of Removal" for "Improper Conduct/Failure to Accurately Record Time" dated September 21, 2017.  Pl.'s Dep. Ex. 5, Letter from A. Hayes to S. Dayoan 1 (Sept. 21, 2017), ECF No. 11-5 at 1-2 ("Dayoan Removal Letter").  The letter stated that Dayoan would be removed from USPS service on November 3, 2017.  It also stated that Dayoan could file a grievance, which she did.  The grievance was settled at the first step of the process, and the Notice of Removal was reduced to an Official Discussion.  Pl.'s Dep. Ex. 5, Settlement Form 1, Oct. 19, 2017, ECF No. 11-5 at 4.  Dayoan was later promoted to rural carrier for Rural Route 12.

## DISCUSSION

Dayoan asserts the following claims against USPS: (1) failure-to-accommodate disability claim under the Rehabilitation Act; (2) disparate treatment claims under Title VII, § 1981, and the Rehabilitation Act based on Rural Route 13 vehicle usage, the May 14, 2017 leave request, Hayes's hostile attitude on May 15, 2017, and the notice of removal; (3) hostile work

environment claims based on the same actions underlying Dayoan's disparate treatment claims; and (4) retaliation claims under Title VII, § 1981, and the Rehabilitation Act based on the notice of removal.[1]  The Court addresses each claim in turn.

## I.  Dayoan's Failure-To-Accommodate Claim

"Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), prohibits covered employers from discriminating against employees based on their disabilities." *Owens v. Governor's Off. of Student Achievement*, No. 21-13200, 2022 WL 16826093, at *4 (11th Cir. Nov. 9, 2022).  To establish discrimination under the Rehabilitation Act, an individual must show that she has "a disability," she is "otherwise qualified for the position," and she "was subjected to unlawful discrimination as the result of [her] disability." *Id.* (quoting *Sutton v. Lader*, 185 F.3d 1203, 1207-08 (11th Cir. 1999)).  "Unlawful discrimination under the Rehabilitation Act includes failing to provide reasonable accommodations for employees' known disabilities." *Id.*

A disability is "a physical or mental impairment that substantially limits one or more major life activities" of a person, including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

---

[1] Dayoan initially asserted a claim under Title I of the Americans with Disabilities Act, but that claim is dismissed because the United States is not an "employer" within the meaning of the ADA. 42 U.S.C. § 12111(5)(B)(i).

thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A) (defining disability and major life activity under the ADA).[2] Here, Dayoan claims that she had a disability caused by her back pain. USPS argues that Dayoan is not an individual with a disability within the meaning of the Rehabilitation Act because she did not submit enough evidence for a factfinder to conclude that her back pain substantially limited one or more of her major life activities. But she did.

Dayoan told Hayes that she needed a postal delivery truck to perform the Rural Route 13 job—a job to which she was entitled under USPS's seniority system. Dayoan informed Hayes she could not get in and out of her personal vehicle at every mailbox because of her back pain. Although Dayoan had been released from her restrictions, her medical records still showed that she had a sprain in the lumbar ligaments of her spine and intervertebral disc displacement. Viewing the evidence in the light most favorable to Dayoan, she let Hayes know that her back condition limited her mobility so much that she would rather relinquish the route that came with six guaranteed days of work than try to do the job without an accommodation. From this evidence, a reasonable factfinder could conclude that Dayoan had

---

[2] In employment discrimination cases, the standards for determining whether an employer violated the Americans with Disabilities Act also apply to the Rehabilitation Act. 29 U.S.C. § 794(d).

a disability within the meaning of the Rehabilitation Act and that she put Hayes on notice of it in April 2017.

USPS argues that even if Dayoan had a disability, she did not establish that USPS failed to accommodate a known disability. Employers must make "reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). "The Rehabilitation Act does not require employers to speculate about their employees' accommodation needs." *Owens*, 2022 WL 16826093, at *4. To trigger her "employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable." *Id.* "Only after the employee provides this information must the employer 'initiate an informal, interactive process' with the employee to discuss the employee's specific limitations, explore potential accommodations, and select the most appropriate accommodation for both the employer and the employee." *Id.* (quoting 29 C.F.R. § 1630.2(o)(3) (2022)).

Here, Dayoan argues that she triggered USPS's accommodation duties when she responded to the offer of the Rural Route 13 position with a text message stating: "I need Postal vehicle to deliver. I can't get off every mail box due to back pain." Text Chain 2, Apr. 10, 2017. This message is certainly a

specific demand for an accommodation.   The next question is
whether the requested accommodation was reasonable.   To
demonstrate that a requested accommodation is reasonable, "an
employee must do at least two things: identify her disability
and suggest how the accommodation will overcome her physical or
mental limitations." *Owens*, 2022 WL 16826093, at *5.   This
requirement ensures that an employer is only required to
accommodate disabilities that are "known" to them.   *Id.*   "In
most cases, to identify a disability, an employee must provide
at least some information about how a physical or mental
condition limits her functioning."   *Id.* (quoting 42 U.S.C. §
12112(b)(5)(A))  "The bottom line is that employees must give
employers enough information to respond effectively to an
accommodation request."   *Id.*

Based on the present record, a reasonable factfinder could
conclude that Dayoan put Hayes on notice that she had a
disability caused by her back pain because the back pain
substantially limited her mobility.   A reasonable factfinder
could also conclude that Dayoan linked her disability to her
accommodation request because she suggested that her disability
could be accommodated if she did not have to exit a vehicle at
every mailbox.   As the *Owens* court acknowledged, the "link
between the disability and the requested accommodation may often
be obvious."  *Owens*, 2022 WL 16826093, at *6.  Here, it does not

12

take specialized medical training to connect Dayoan's disability
to her request for accommodation.   Again, Dayoan presented
evidence that she had a back sprain and disc displacement that
caused significant pain and limited her mobility.   She explained
to Hayes that having a right-hand drive postal delivery truck
would alleviate her physical limitation because she could
deliver mail without having to get out of the vehicle at every
stop.   Thus, a reasonable factfinder could conclude that Dayoan
gave Hayes enough information to trigger USPS's duties under the
Rehabilitation Act, so USPS is not entitled to summary judgment
on Dayoan's failure-to-accommodate Rehabilitation Act claim.[3]

## II.  Dayoan's Disparate Treatment Claims

In addition to her failure-to-accommodate claim, Dayoan
asserts that USPS discriminated against her because of her race,
national origin, and disability.   Title VII's federal sector
provision states that personnel actions affecting USPS employees
"shall be made free from any discrimination based on race,
color, religion, sex, or national origin."   42 U.S.C. § 2000e-
16(a).   42 U.S.C. § 1981 prohibits employment discrimination
based on race.   And the Rehabilitation Act "prohibits covered
employers from discriminating against employees based on their

---

[3] The Court recognizes that even if an employer failed to provide a
reasonable accommodation, the employer may avoid liability by showing
that "the accommodation would impose an undue hardship on the"
employer's operation.   42 U.S.C. § 12112(b)(5)(A).   USPS did not move
for summary judgment on this affirmative defense.

disabilities." *Owens*, 2022 WL 16826093, at *4.[4]  Where, as here, a plaintiff relies on circumstantial evidence to establish a disparate treatment claim, the courts generally apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Owens* 2022 WL 16826093, at *7 (Rehabilitation Act); *Lewis v. City of Union City*, 918 F.3d 1213, 1220 & n. 5 (11th Cir. 2019) (en banc) (Title VII and § 1981).  The first step of that framework is for the plaintiff to establish her prima facie case of discrimination "by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis*, 918 F.3d at 1220-21.[5]

Dayoan asserts that she was subjected to four separate adverse employment actions because of her race, national origin, and disability.  USPS does not seriously dispute that Dayoan was a member of a protected class or that she was qualified to perform her job.  USPS does assert that some of the challenged actions were not adverse employment actions, and it argues that

---

[4] The three statutes have different causation standards, but the Court need not address those differences here.

[5] If the plaintiff establishes a prima facie case, then the employer may articulate a legitimate, nondiscriminatory reason for its actions. *Lewis*, 918 F.3d at 1221.  If the employer articulates a legitimate, nondiscriminatory reason, then the plaintiff must show that the proffered reason is "pretext for unlawful discrimination." *Id.*

Dayoan did not point to similarly situated comparators outside her protected class who were treated more favorably.

For purposes of a discrimination claim under the statutes at issue here, an "adverse employment action" is "a serious and material change in the terms, conditions, or privileges of employment." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *Tarmas v. Sec'y of Navy*, 433 F. App'x 754, 762 (11th Cir. 2011) (per curiam) (adopting Title VII definition of "adverse employment action" in Rehabilitation Act case). "It is clear . . . that not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis*, 245 F.3d at 1238. To be actionable, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1239. Normally, to meet the statutory threshold, an action must negatively affect the employee's pay or benefits, or it must place the employee in an objectively undesirable position.

To establish the "similarly situated comparator" element of the prima facie case, a plaintiff "must show that she and her comparators are 'similarly situated in all material respects'" and that the comparators were treated more favorably. *Lewis*,

918 F.3d at 1226.   Ordinarily, employees are similarly situated in all material respects if they engaged the same basic conduct, were subject to the same policies and rules, had the same supervisor, and shared similar work histories. *Id.* at 1227-28.

### A.   Rural Route 13 Vehicle Usage

The first action Dayoan challenges is the vehicle usage for Rural Route 13.   Dayoan contends that after she told Hayes that she needed a postal delivery truck to deliver Rural Route 13, she was not allowed to use a postal delivery truck when she worked on Rural Route 13 unless she was also working a route that had an assigned postal delivery truck, while non-Asian, non-Korean, non-disabled employees Shevonne Simpson, Sharon May, and Beverly Bullock were allowed to use a postal delivery truck even if they were only delivering Rural Route 13.   Dayoan did not explain how this is an adverse employment action.

To be clear, Dayoan does not assert that she was ever assigned to deliver Rural Route 13 without the postal delivery truck.   She did not argue or present evidence that it is an adverse employment action for an RCA to deliver Routes 12 and 13 on the same shift.   Her evidence suggests that other RCAs were often assigned to Routes 12 and 13 on the same shift.   Rural Carrier Trip Reports 1-7, 9.   As for the proffered comparators, Dayoan's evidence shows that Simpson, the regular rural carrier for Route 13, sometimes had to deliver both Route 12 and Route

13 on the same shift and sometimes had to use her personal vehicle to deliver Route 13.   *Id.* at 1–2, 4–5, 7–8.   The evidence also does not establish that the other two comparators, May and Bullock, got to use a postal delivery truck when they delivered Rural Route 13.   While the entries for other RCAs state whether a personal or government vehicle was used, the entries for May and Bullock do not contain that information.   *Id.* at 5–6, 9.   For all these reasons, the Court finds that Dayoan did not establish a prima facie case of discrimination based on vehicle usage for Rural Route 13, and these disparate treatment claims fail.

> B.   Sunday Parcel Delivery

The second challenged action is that non-Korean, non-Asian employees who did not volunteer for Sunday parcel delivery were not required to work on Sundays, while Dayoan was.   Dayoan's proffered comparators for this issue are Troy Bartlett, James Garrett, and Shevonne Simpson.   Dayoan pointed to evidence that during five weeks (presumably in 2017), she was scheduled for Sunday parcel delivery twice, while Bartlett, Garrett and Simpson were not scheduled for Sunday parcel delivery at all.   Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. 16, Schedules, ECF No. 12-19.   Bartlett is not on any of the schedules; it is not clear from the schedules that he was an active RCA during the timeframe, so the Court finds that he is not a valid comparator.

Garrett and Simpson are also not valid comparators.  Both were
scheduled to work six days each week—every day except Sunday—
while Dayoan was not scheduled to work more than four days in
any week.  As discussed above, USPS managers were allowed to
schedule RCAs from the "non-volunteer" list for Sunday parcel
delivery on a rotating basis if there were not enough other
leave replacements.  Memo. of Understanding 1.  But management
could bypass a leave replacement in the non-volunteer rotation
if the RCA would exceed forty hours at the end of the week, *id.*
at 2, and Dayoan did not present any evidence to suggest that
the policy requires that an RCA who is assigned to deliver on
six days in a week should also be required to deliver on a
seventh day based on the non-volunteer rotation.  Thus, Dayoan
did not establish that Garrett and Simpson were similarly
situated to her in all material respects under the relevant
policy.  She did not establish a prima facie case of
discrimination regarding Sunday work, so these claims fail.

    C.    May 14, 2017 Leave Request and May 15, 2017 Incident

The third action Dayoan challenges is Hayes's conduct
related to her leave request for May 14, 2017.  Dayoan asserts
that Hayes did not timely respond to her leave request, that she
did not have explicit permission to take leave on May 14, 2017,
and that she feared she might be marked absent without leave if
she did not appear for work.  But Dayoan did not work on May 14,

2017, and she was not marked absent without leave.  There was no serious and material change to the terms and conditions of Dayoan's employment, so Hayes's failure to respond to her leave request is not a discriminatory adverse employment action.  To the extent that Dayoan seeks to assert discriminatory disparate treatment claims based on Hayes's failure to approve leave for May 14, 2017, those claims fail.

Dayoan also asserts that when she reported for work on May 15, 2017, Hayes had a hostile attitude toward her and told her not to touch anything, so she had to stand idle for thirty minutes while her colleagues worked.  But Dayoan did not point to any evidence that Hayes's conduct affected her in any material way—no evidence that it resulted in docking her pay or some disciplinary action.  Therefore, to the extent that Dayoan seeks to assert discriminatory disparate treatment claims based on Hayes's hostile attitude on May 15, 2017, those claims fail.

D.   The Notice of Removal

Finally, Dayoan challenges the notice of removal she received from Hayes dated September 21, 2017.  She points out that Simpson, who is black, received a notice of *proposed* removal on September 14, 2017 for reporting to work seven minutes late and then lying about it to Hayes during an investigative interview—virtually the same misconduct for which Dayoan received the notice of removal.  Def.'s Mot. Summ. J. Ex.

5, Letter from A. Hayes to S. Simpson (Sept. 14, 2017), ECF No. 9-7 ("Simpson Removal Letter"). Dayoan's letter states that she "will be removed" on November 3, 2017, and it does not provide an opportunity for her to appeal the decision to the postmaster. Dayoan Removal Letter 1. In contrast, Simpson's letter states that it is a proposed removal and that she may answer the proposal before the postmaster. Simpson Removal Letter 1–2. Both letters state that the employees have a right to file a grievance regarding the decision.

Dayoan argues that it was an adverse employment action for her to receive a notice of removal instead of a notice of proposed removal like Simpson did. She contends that she, unlike Simpson, had no opportunity to respond before receiving a final decision, but the record belies that assertion: Dayoan filed a grievance, and USPS withdrew the notice of removal at step one of the grievance process, before her termination date. An employment action is not an "adverse employment action" for purposes of a discrimination claim if the employer rescinds it before the employee suffers any tangible harm. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001). Thus, Dayoan failed to establish a prima facie case of discrimination based on the notice of removal, so these claims fail.

20

## III. Dayoan's Hostile Work Environment Claim

In addition to her disparate treatment claims based on discrete challenged employment actions, Dayoan also asserts hostile work environment claims. Being forced to work in a hostile work environment that is based on an employee's protected characteristic can amount to actionable discrimination under Title VII, § 1981, and the Rehabilitation Act. To establish a discriminatory hostile work environment, a plaintiff must "show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836-37 (11th Cir. 2021) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th. Cir. 2002)). The plaintiff must also show that the discriminatory conduct is based on the plaintiff's protected characteristic. *Id.* at 836. "To be sufficiently 'severe or pervasive,' the employer's actions 'must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive.'" *Id.* at 837. (alterations in original) (quoting *Miller*, 277 F.3d at 1276). To evaluate the objective severity of the harassment, the courts "look to the totality of the circumstances, including: '(1) the frequency of

the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Id.* (quoting *Miller*, 277 F.3d at 1276).

Here, Dayoan's hostile work environment claims are based on the same challenged employment actions that are the subject of her disparate treatment claims. But hostile work environment claims "are different in kind from discrete acts," in part because "a single act of harassment may not be actionable on its own," and in part because harassment is not one specific employment decision with immediate consequences. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). In general, discrete acts of alleged discrimination are not part of a hostile work environment unless they are "the same type of 'discriminatory intimidation, ridicule, and insult'" that characterize a hostile work environment. *Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Here, Dayoan wants to repackage her failure-to-accommodate claim and her claims based on the notice of removal as "harassment." But they are specific employment decisions, and Dayoan has not established that they were connected to any discriminatory intimidation, ridicule, or insult, so the Court finds that these

two discrete employment acts are not separately actionable under a hostile work environment theory.

The other conduct Dayoan challenges is Hayes's behavior in May of 2017. Dayoan claims that Hayes harassed her by failing to approve her leave request for May 14, 2017, by having a hostile attitude toward her on May 15, 2017, and by telling her not to touch anything for about half an hour on May 15, 2017. This conduct does not amount to objectively severe or pervasive harassment. It was not frequent, it was not severe, and it was not physically threatening or humiliating. Thus, it is not actionable harassment, and USPS is entitled to summary judgment on Dayoan's discriminatory hostile work environment claims.

## IV. Dayoan's Retaliation Claims

Dayoan's final claim is for retaliation. Dayoan claims that Hayes issued the notice of removal because she filed a formal EEO complaint of discrimination on August 16, 2017. Title VII, § 1981, and the Rehabilitation Act all protect employees from adverse actions based on statutorily protected conduct. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451 (2008) (§ 1981); *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1203 (11th Cir. 2021) (42 U.S.C. § 2000e-16); *Owens,* 2022 WL 16826093, at *7 (Rehabilitation Act).[6] In general, to establish

---

[6] The three statutes have different causation standards, but the Court need not address those differences here.

a retaliation claim, a plaintiff must show that she engaged in statutorily protected activity, that her employer took a materially adverse action against her, and that the adverse action was causally related to the protected activity. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (Title VII and § 1981).

Here, Dayoan asserts that she engaged in protected activity on August 16, 2017, when she filed her formal EEO complaint of discrimination. To prove causation under any of the applicable causation standards, "a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). Hayes was the person who decided to issue the notice of removal, and Dayoan summarily asserts that he knew about her formal EEO complaint before he issued the notice of removal dated September 21, 2017.

Dayoan suggests that Hayes must have known about her formal EEO complaint in August 2017 because (a) he knew she made initial contact with the EEO office in June 2017 and (b) he investigated the incident giving rise to the notice of removal just three weeks after she filed her formal EEO complaint on August 16, 2017. But Dayoan did not point to any *evidence* on this point—no evidence of when Hayes (or anyone else at USPS)

received a copy of the formal EEO complaint or other notice about it. Rather, she pointed to evidence that Hayes provided an EEO investigative affidavit dated October 23, 2017, responding to a list of questions from the USPS's EEO office. Hayes Aff., Oct. 23, 2017, ECF No. 9-4 at 1-12. She also pointed to evidence that Hayes provided a supplemental affidavit dated October 25, 2017. Hayes Suppl. Aff., Oct. 25, 2017, ECF No. 9-4 at 13-16. In the supplemental affidavit, Hayes stated that he became aware of Dayoan's "current EEO activity" when he received an email from the USPS's EEO office. *Id.* Dayoan did not point to evidence of when Hayes received the email from the USPS's EEO office that put him on notice of Dayoan's formal EEO complaint. Thus, the Court cannot conclude from the present record that Hayes was aware of Dayoan's formal EEO complaint when he decided to issue the notice of removal, so even if the notice of removal was a materially adverse action that would have dissuaded a reasonable employee from complaining of discrimination, Dayoan did not establish a causal connection between her protected activity and the adverse action. Her retaliation claims thus fail.

CONCLUSION

As discussed above, USPS's summary judgment motion (ECF No. 9) is denied as to the failure-to-accommodate claim under the Rehabilitation Act but granted as to all her other claims. This

action will be tried during the Court's March 2023 trial term in Columbus.

IT IS SO ORDERED, this 23rd day of November, 2022.

S/Clay D. Land

CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA